IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

$48,000.00 in U.S. CURRENCY,

    Defendant,

and

MATTHEW PITLER,

    Claimant.

CIV. NO. 04-0342 RB/DJS

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Claimant Matthew Pitler's ("Mr. Pitler") motion to dismiss the Government's *in rem* forfeiture action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons that follow, this Court denies Mr. Pitler's motion to dismiss.

### I. FACTUAL BACKGROUND.

On October 20, 2003, Mr. Pitler purchased a one-way Amtrak ticket from Chicago, Illinois to Los Angeles, California. (Compl. ¶ 11.) While stopped in Albuquerque, DEA Task Force Officer Art Lucero ("TFO Lucero") and Special Agent Kevin Small ("SA Small") boarded the train and checked the tickets of all the passengers. (Compl. ¶¶ 9-10.) Recognizing that Mr. Pitler's purchase of a one-way cash ticket was consistent with drug and money couriers who used Amtrak, TFO Lucero approached Mr. Pitler's roomette in Car 331, Room A, and asked for permission to speak with him. (Compl. ¶¶ 11-12.) Mr. Pitler agreed to speak with TFO Lucero.

(Compl. ¶ 13.)

During approximately three minutes of questioning TFO Lucero i) informs Mr. Pitler that he is questioning him because his purchase of a one-way cash ticket minutes before departure is consistent with the travel habits of those who traffic in narcotics, weapons and large amounts of U.S. currency; ii) asks Mr. Pitler if he has any of these items with him and Mr. Pitler replies that he does not; iii) asks Mr. Pitler for his consent to search his one piece of luggage (a black suitcase located in the Northwest corner of the roomette) or to have a dog sniff it, but Mr. Pitler refuses; and iv) notes Mr. Pitler's nervous behavior and lack of eye contact throughout the conversation. (Compl. ¶¶ 14-21.) SA Small then stands to the side of the entrance to Mr. Pitler's roomette and asks permission to speak with him, to which Mr. Pitler agrees. (Compl. ¶ 22.)

Over the course of their encounter SA Small discovers several inconsistencies. For example, Mr. Pitler initially says he is planning to visit with his friend John in Los Angeles for a couple weeks but later says he will stay there for only one week. (Compl. ¶¶ 23,27,37.) Mr. Pitler explains that he can not provide any contact information for John because John currently has no phone, but that he contacted John through somebody named "Rick" so John would pick him up at the Los Angeles train station. (Compl. ¶¶ 35-36.)

Mr. Pitler tells SA Small that he has never been arrested before and allows SA Small to run his identification for warrants. (Compl. ¶¶ 29-32.) The scan of Mr. Pitler's Colorado driver's license indicates that Mr. Pitler has been arrested four times on drug related charges since 1997[1]

---

[1] In February 1997 Mr. Pitler was arrested in Chicago for possession of an illegal controlled substance. In June 2000, police arrested him in Telluride, Colorado for possession of marijuana and possession of narcotic equipment. In October 2001 he was arrested in Fort Collins, Colorado for felony possession of dangerous drugs, the charge to which he plead guilty in December 2001. Then, in November 2002, Longmont, Colorado police arrested him for possession of marijuana and possession of narcotic equipment. (Compl. ¶ 51).

and plead guilty to a felony possession of dangerous drugs charge in 2001. (Compl. ¶ 51.) Mr. Pitler tells SA Small that he currently lives with his father, who purchased the train ticket for him, in Highland Park, Illinois. (Compl. ¶ 40.) He provides SA Small with a phone number for his father but when SA Small calls this number nobody at the number knows Mr. Pitler. (Compl. ¶¶ 41-42.)

At this point, noting the inconsistencies in Mr. Pitler's answers, SA Small advises Mr. Pitler that the agents will conduct a canine inspection of his bag (Compl. ¶ 43.) SA Small gives Mr. Pitler the option of taking his luggage downstairs or leaving it in his room and waiting for TFO Lucero to bring the dog upstairs. (Compl. ¶ 44.) Mr. Pitler indicates his desire to remain in his roomette. *Id.* TFO Lucero brings his dog "Red," who is certified to detect marijuana, cocaine, heroin, or methamphetamine into Mr. Pitler's train car and Red "alerts" to Mr. Pitler's suitcase. (Compl. ¶ 45.)

SA Small then gives Mr. Pitler the option of i) waiting for the agents to detain the bag pursuant to a valid search warrant, or ii) consenting to the search of his luggage. (Compl. ¶ 46.) Mr. Pitler tells the agents there is nothing in his luggage and permits the agents to search his suitcase. (Compl. ¶¶ 46-48.) TFO Lucero and SA Small searched Mr. Pitler's suitcase and found $48,000.00 in U.S. currency wrapped in a vacuum-sealed plastic bag. (Compl. ¶¶ 48-50.) Mr. Pitler indicated to the DEA agents that he does not currently work but that he worked for one year as a cook at a restaurant in Fort Collins, Colorado before he drove out to Chicago to live with his father. (Compl. ¶¶ 33.38.) He offered this previous employment as an explanation for how he earned the money in his luggage. (Compl. ¶ 49.)

## II. ANALYSIS.

*1. Whether Mr. Pitler has standing under 18 U.S.C. § 983(d)(6)(A) and whether he must file an answer before filing his Rule 12(b)(6) motion to dismiss?*

### A. Standing.

First, the Government argues that Mr. Pitler does not have standing to file his motion before this Court. The "irreducible constitutional minimum of standing" contains three elements: i) an "injury in fact," that is an actual, concrete harm suffered; ii) a "causal connection" between the injury and the conduct complained of; and iii) redressability of the injury by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In this case, Mr. Pitler suffered an injury in fact in that the Government seized $48,000.00 from him. A causal connection exists since Mr. Pitler alleges that the Government violated his rights by taking his money. Lastly, this Court can redress his injury if it dismisses the Government's forfeiture action and returns his money.

In addition, 18 U.S.C. § 983(d)(6)(A) defines a property owner as "a person with an ownership interest in the specific property sought to be forfeited . . . ." An owner, however, does not include "a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized . . . ." 18 U.S.C. § 983(d)(6)(B)(ii). The Government argues, therefore, that this Court should characterize Mr. Pitler as simply a bailee, who, unlike the true owner, does not have standing under the statute to claim an interest in the money seized. A claimant's statement that he owns the currency in question in a forfeiture proceeding is sufficient to state an interest despite the Government's contention that the money belongs to someone else. *See United States v. $40,000.00 in Currency*, 763 F. Supp. 1423, 1426-27 (S.D. Ohio 1991).

4

Moreover, the Government acknowledges that Mr. Pitler can claim an interest in this money in its Complaint. (Compl. ¶ 5 (a).) While other people as yet unknown may one day claim an interest in the money at issue in this action, it appears that Mr. Pitler qualifies as an owner under the statute. The DEA agents seized the $48,000.00 pursuant to a search of Mr. Pitler's luggage. The search took place in Mr. Pitler's train car. He had a ticket in his name for that roomette and claimed ownership of the suitcase in which the agents found the currency at issue from the moment TFO Lucero asked for permission to speak with him. He subsequently filed his motions as a claimant to this currency shortly after the Government gave notice in this forfeiture action. Mr. Pitler, therefore, has standing in this case.

### B. The motion to dismiss is proper at this time.

Second, the Government contends that 18 U.S.C. § 983 prevents Mr. Pitler from filing a motion to dismiss this *in rem* forfeiture action prior to filing an answer or the start of discovery. (United States' Resp. to Mot. to Dismiss, at 2.) The Civil Asset Forfeiture Reform Act ("CAFRA") provides that: "A person asserting an interest in seized property . . . shall file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim." 18 U.S.C. § 983 (a)(3)(D). The Government argues that Mr. Pitler may not file a motion to dismiss before or in lieu of filing an answer.

Mr. Pitler, however, argues that Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims permits him to file a motion to dismiss in lieu of filing an answer. While the federal rules of civil procedure apply to all civil actions, including *in rem* forfeiture actions, the Supplemental Rules apply specifically to *in rem* forfeiture proceedings. SUPP. RULES FOR CERTAIN ADMIRALTY & MARITIME CLAIMS R. A (2004). Like 18 U.S.C. § 983(a)(3)(D), both Supplemental Rule C(6) and Rule 12 require serving an answer within 20

5

days. Supplemental Rule C(6) requires interested parties to "serve and file an answer within 20 days after filing the statement [of interest or right]." SUPP. RULES FOR CERTAIN ADMIRALTY & MARITIME CLAIMS R. C(6)(a)(iii). Rule 12 requires defendants to serve an answer "within 20 days after being served with the summons and complaint." FED. R. CIV. P. 12(a)(1)(A). Yet Rule 12 also allows a party to file motions permitted under Rule 12, including a motion to dismiss, in lieu of an answer and if the court denies this motion, to file an answer "10 days after notice of the court's action." FED. R. CIV. P. 12(a)(4)(A).

In *United States v. $8,221,877.16*, 330 F.3d 141 (3d Cir. 2003), the Third Circuit did not view Rule 12 as inconsistent with the Supplemental Rules. The court explained that:

> "The balance between the two is struck in favor of the Supplemental Rules, which always apply to civil forfeiture proceedings. *See* U.S.C. § 983(a)(3) . . . . However, the Supplemental Rules . . . are special provisions that overlay the Civil Rules, adding unique requirements necessary only in forfeiture and admiralty proceedings that have no place in general civil litigation . . . . The Civil Rules therefore also apply to in rem proceedings, but only to the extent that they are not "inconsistent with" the Supplemental Rules. Supp. R.A. *Id.* at 149.

The court reasoned that the "position that Rule C(6) 'encompasses the entire field' of forfeiture pleadings and disallows pre-answer motions by *failing to mention them* cannot logically be reconciled with Rule A's instruction that we look to the Civil Rules when the Supplemental Rules are *silent* on a particular procedural provision." *Id.* at 157 (emphasis in original). The court held that a claimant may file a motion to dismiss in response to a forfeiture complaint before filing an answer. *Id.* at 153. It's reasoning is persuasive. Mr. Pitler's motion to dismiss is timely and this Court will rule on it.

*2. Whether this Court should deny Mr. Pitler's 12(b)(6) motion to dismiss because the $48,000 found in Mr. Pitler's suitcase is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 1952?*

### A. Standard.

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted "all well-pleaded allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Moffett v. Halliburton Energy Services, Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002) (citing *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001)). In doing so, this Court "need not accept . . . conclusory allegations as true." *Moffett*, 291 F.3d at 1231 (quoting *Southern Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). This Court, however, should not grant a 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6).

### B. The forfeiture statutes.

First, 21 U.S.C. § 881(a)(6) provides that: "All monies . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . all proceeds traceable to such an exchange, and all moneys . . . intended to be used to facilitate any violation of this subchapter . . ." shall be subject to forfeiture. In addition, 18 U.S.C. § 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . this title or any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)" shall be subject to forfeiture to the United States. 18 U.S.C. § 1952 (a)(1) applies to: "Whoever travels in interstate or foreign commerce . . . with intent to distribute

7

the proceeds of any unlawful activity . . . ." 18 U.S.C. § 1952(b) lists "narcotics or controlled substances (as defined in . . . the Controlled Substances Act)" as an unlawful activity as well as those listed under 18 U.S.C. § 1956, which makes money used in violation of the Controlled Substances Act subject to forfeiture under 18 U.S.C. § 981(a)(1)(C). Next, 18 U.S.C. § 983(c)(1), provides that: "In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property--the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."

Forfeiture is proper, in other words, where the "aggregate of facts" establish that probable cause exists that the property was used in connection with or was derived from a drug transaction. *See United States v. $149,442.23 in United States Currency*, 965 F.2d 868, 876 (10th Cir. 1992) (stating also that "the government bears the initial burden to show probable cause for the institution of the forfeiture action"). To survive a motion to dismiss a forfeiture complaint for failure to state a claim, the facts alleged must provide a reasonable basis for the Government's belief that there is probable cause to forfeit defendant's property due to a "substantial connection" with narcotics trafficking. 18 U.S.C. § 983 (c)(3); 21 U.S.C. § 881(a)(6)(b); *United States v. $149,442.23 in United States Currency*, 965 F.2d at 876-77.

In this case, several facts alleged by the Government establish probable cause that the $48,000.00 recovered from Mr. Pitler's suitcase is subject to forfeiture. First, Mr. Pitler purchased a one-way cash ticket from Chicago to Los Angeles. Questioning by two DEA agents revealed several inconsistencies. For instance, Mr. Pitler could not provide the agents with the correct telephone number for his father, with whom he claimed to live. He could not provide a phone number for the friend he claimed to be traveling out to California to stay with for a couple weeks or the last name of the person through whom he contacted his friend out in Los Angeles.

In addition, despite Mr. Pitler's denial of ever having been arrested, a scan of his driver's license revealed four arrests on drug related offenses since 1997 and a guilty plea to felony possession of dangerous drugs in 2001. A DEA canine, certified to detect the presence of narcotics, alerted DEA agents to Mr. Pitler's suitcase and a subsequent search of Mr. Pitler's luggage uncovered $48,000.00 in vacuum-sealed plastic. Lastly, Mr. Pitler's explanation that he earned the money by working as a cook for one year in a Fort Collins, Colorado pizzeria restaurant is not credible.

The facts alleged in the Government's complaint provide a reasonable basis for the Government's belief that probable cause exists to subject Mr. Pitler's property to forfeiture due to its substantial connection with narcotics trafficking. The Government has met its initial burden to show by a preponderance of the evidence that the $48,000.00 is subject to forfeiture. This Court, therefore, denies Mr. Pitler's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

**IT IS HEREBY ORDERED: Claimant Mr. Pitler's Rule 12(b)(6) motion to dismiss the Government's *in rem* forfeiture action for failure to state a claim upon which relief may be granted is Hereby Denied.**

*(signature)*

**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**